Barbara D. SCHERER, Plaintiff–
Appellant,

v.

THE EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED STATES,
Defendant–Appellee.

Docket No. 02–7439.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 27, 2002.

Decided: Oct. 16, 2003.

Victor M. Serby, New York, NY, for Plaintiff–Appellant.

Andrew I. Hamelsky, Wright, Pindulic & Hamelsky, LLP, New York, NY, for Defendant–Appellee.

Before: LEVAL and CALABRESI, Circuit Judges, and TRAGER, District Judge.*

CALABRESI, Circuit Judge.

On April 15, 1998, Appellant Barbara D. Scherer instituted a state-court action to recover disability benefits pursuant to her insurance policy with Appellee Equitable Life Assurance Society. A trial followed, resulting in a jury verdict for Equitable on May 3, 2001. On November 19, 2001, while her state case was on appeal, Scherer brought suit in the United States District Court for the Southern District of New York, seeking benefits from April 16, 1998. Her suit was dismissed for want of a jurisdictionally sufficient amount in controversy. The district court (Haight, *J.*) held that the state-court judgment had determined all the issues through May 3, 2001, and that the sum total of benefits that Scherer could have accrued between May 3 and November 19, 2001 fell short of the $75,000 threshold for diversity jurisdiction. We vacate and remand.

The district court's use of preclusion doctrines to winnow down the amount in controversy so that it failed to reach the jurisdictional threshold does not comport with the rule that the amount in controversy is to be ascertained as of the time of filing, without regard to waiveable "affirmative defenses." Scherer's federal complaint, when filed, put in controversy liability for disability benefits from April 16, 1998 to November 19, 2001. Cumulated over that period, Scherer's disability benefits would surpass the $75,000 amount-in-controversy threshold. It is not disputed that the parties are diverse. Accordingly, federal jurisdiction exists.

## BACKGROUND

The case at bar arises from a dispute between Scherer and Equitable over benefits for work-related disabilities which Scherer allegedly suffers on account of a deteriorating spinal condition. After much back and forth, Equitable stopped paying benefits on April 2, 1997. Some twelve months later, on April 15, 1998, Scherer brought an action in state court for breach of contract, seeking "damages to date in the sum of approximately [$66,000]" and a declaration that she was disabled from the time that Equitable had terminated her benefits to the "present date." A trial followed, resulting in a jury verdict for Equitable on May 3, 2001, which Scherer appealed.

On November 19, 2001, while her state case was pending before the New York Appellate Division, Scherer sued in federal court for a preliminary injunction and various other forms of relief, including unpaid disability benefits dating back to April 16, 1998 and a declaratory judgment that certain back premiums demanded by Equitable were not due under the terms of the policy.[1] Equitable opposed the prelimi-

---

* The Honorable David G. Trager of the United States District Court for the Eastern District of New York, sitting by designation.

1. She also sought a lump-sum payment of "accelerated" future benefits, punitive damages, and damages for deceptive practices. The district court ruled out "accelerated benefits" as an item in dispute. The court noted that New York law only allows this form of recovery in insurance disputes where there has been "complete repudiation" by the insurer. Such a complete repudiation, the court said, was incompatible with the allegations of Scherer's complaint. The court also

nary injunction, in part on the ground that the court lacked jurisdiction because Scherer could not satisfy the amount-in-controversy requirement.[2] Judge Haight treated this jurisdictional argument as a 12(b)(1) motion to dismiss, which, in due course, he granted.

The district court reviewed the state proceedings and held (1) that the state trial had concluded liability for past benefits through May 3, 2001, and (2) that this was res judicata for purposes of the federal suit. As a result, the only "past benefits" still at issue were those for the period between May 3, 2001, and November 19, 2001. The total monetary value of those benefits, added to the back premiums that Scherer sought to avoid paying, totaled no more than $26,415. Since this was well below the $75,000 amount-in-controversy threshold for federal diversity jurisdiction, the case was dismissed. This appeal followed.

The central question on appeal is whether the district court correctly employed preclusion doctrines to "pare down" the amount in controversy. In this regard, the parties contest, among other things, whether the state action concluded liability through the date of the jury verdict, as the district court found, or only through the date on the complaint.

The pleadings and the verdict sheet do not unequivocally establish whether April 15, 1998, or May 3, 2001, was the end-date of the period of liability adjudicated in state court. Scherer's state-court complaint, dated April 15, 1998, sought "damages *to date* [from March 1997]" of $66,000, as well as "[s]uch other and further relief as the court may [deem just]

and proper" (emphasis added). Yet the verdict sheet did not give April 15, 1998 as the end-date. Rather, it left that date unspecified, having framed the question of liability thus:

2(a) Was Barbara Scherer unable, due to injury or sickness, to engage in the substantial and material duties of her regular occupation for any period of time subsequent to March 13, 1997?

2(b) If your answer to Question 2(a) is "Yes," specify each period of time during which Barbara Scherer was unable, due to injury or sickness, to engage in the substantial and material duties of her regular occupation.

The jury answered the first question in the negative (without indicating an end date), which made the second question irrelevant.

Some events during trial suggest that the parties and the trial judge thought that the suit was meant to determine Equitable's liability for benefits through the period marked by the end of the trial. Scherer both maintained that she was totally disabled "continuously" since 1995, and, on several occasions, testified to her state of health as of the time of trial. Her medical witnesses commented on the worsening of her symptoms from 1997 through 2001, and compared MRIs taken in 1997 and in 2000. This testimony was admitted without objection.

In the district court's view, the open-ended questions on the verdict sheet, when read in the light of Scherer's and her doctors' testimony, signify that the parties, the jurors, and the state judge all understood that the task at hand was to find whether disability benefits were owed to Scherer for the period through the time of

---

found that punitive damages and recovery for deceptive practices were unavailable under state law. Because of our disposition of this appeal, we do not review these rulings of the district court.

2. Scherer then amended her complaint, but that change is not relevant to our disposition of the appeal.

trial. Accordingly, the district court held the state judgment to preclude any suit for pre-May 3, 2001 benefits.

## DISCUSSION

### I.

The diversity statute confers original jurisdiction on the federal district courts with respect to "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a). Federal Rule of Civil Procedure 12(b)(1) authorizes motions to dismiss for lack of subject matter jurisdiction. We review 12(b)(1) dismissals de novo on the law, and for clear error on the facts. *Virtual Countries, Inc. v. Republic of S. Africa,* 300 F.3d 230, 235 (2d Cir.2002).

■ "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir.1994) (quoting *Moore v. Betit,* 511 F.2d 1004, 1006 (2d Cir.1975)). This burden is hardly onerous, however, for we recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 63 (2d Cir.1999).

■ To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold. *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). Our cases have set a high bar for overcoming this presumption. "[T]he legal impossibility of recovery must

be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago,* 93 F.3d 1064, 1070–71 (2d Cir.1996) (quoting *Tongkook,* 14 F.3d at 785). "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982); *see also Tongkook,* 14 F.3d at 785 ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.")

■ Two further points by way of legal background are in order. First, we measure the amount in controversy as of the date of the complaint. Once jurisdiction has attached, it cannot be ousted by subsequent events. *See Wolde–Meskel,* 166 F.3d at 62 (discussing the "time of filing" rule for determining the amount in controversy). Second, affirmative "defenses asserted on the merits" may not be used to whittle down the amount in controversy. *Zacharia,* 684 F.2d at 202. Were such defenses to affect the jurisdictional amount, we have said, "doubt and ambiguity would surround the jurisdictional base of most diversity litigation from complaint to final judgment[, and i]ssues going to a federal court's power to decide would be hopelessly confused with the merits themselves." *Id.* Even where the complaint itself "discloses the existence of a valid defense," we have declined to consider it in determining whether the jurisdictional threshold is met. *Ochoa v. Interbrew Am., Inc.,* 999 F.2d 626, 628 (2d Cir.1993) (quoting *Red Cab,* 303 U.S. at 288–289, 58 S.Ct. 586).

The rule that affirmative defenses may not be used in determining the jurisdictional amount does not appear to depend

on whether a colorable argument against the defense has been advanced. Thus in *Zacharia*, we cited *Kissick Const. Co. v. First Nat. Bank of Wahoo*, 46 F.Supp. 869 (D.Neb.1942), as an example of the affirmative defense rule, *see Zacharia*, 684 F.2d at 202, and in *Kissick*, the applicability of the asserted defense (a statute of limitations) was not disputed, *see Kissick*, 46 F.Supp. at 870.

This may seem paradoxical: if it can be said "to a legal certainty" that the defense in question is a winning defense, ought it not be considered for amount-in-controversy purposes? One plausible answer is that because affirmative defenses can be waived, the court cannot *at the time of filing* be certain that any given affirmative defense will be applied to the case. Given the time-of-filing rule, it follows that waiveable "affirmative defenses" are not germane to determining whether the amount-in-controversy requirement has been met.[3]

Whatever the justification, the point for present purposes is that the affirmative defense rule is the law of this circuit, to which we are bound. *See Zacharia*, 684 F.2d at 202.

## II.

The parties dispute whether it can be said "to a legal certainty" that the state trial concluded liability through the date of the jury's verdict. But to explore that question would be a digression, for there is a more fundamental problem with the decision below. The preclusion doctrines, relied on by the district court to calculate the amount in controversy, are waiveable affirmative defenses. *See, e.g., Curry v. City of Syracuse*, 316 F.3d 324, 330–31 (2d Cir.2003) ("[C]ollateral estoppel, like res judicata, is an affirmative defense. As such, it normally must be pled in a timely manner or it may be waived."); *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 108 (2d Cir.2001) ("Collateral estoppel and res judicata ... are affirmative defenses."); *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir.1999) ("[R]es judicata ... and collateral estoppel ... are affirmative defenses that must be pleaded by the defendant.")[4]

---

**3.** This justification for the rule, posited in *Schunk v. Moline Milburn & Stoddard Co.*, 147 U.S. 500, 505, 13 S.Ct. 416, 37 L.Ed. 255 (1893), is also noted (with further case citations) in Wright & Miller & Cooper, Federal Practice & Procedure § 3702 at 74 (3d ed.1998).

**4.** Judge Trager, in his powerful dissent, asserts that it is an "erroneous premise that res judicata is a waivable defense." As noted above, whether or not it should be waiveable, the law of the Circuit is that it is. Judge Trager correctly points out, however, that a court is free to raise that defense *sua sponte*, even if the parties have seemingly waived it. There is, however, no obligation on the part of a court to act *sua sponte* and interpose the defense if it has not been raised. Nor does *Salahuddin* hold that such a *sua sponte* application of res judicata is mandatory. There may be some instances where it would be improper for a court not to consider the defense, and *Salahuddin*'s facts may have been an example. But that is very different from putting a burden on courts to act on their own and invariably apply preclusion defenses. Indeed, the *sua sponte* application of res judicata is not always desirable, given the variety of legal and equitable considerations involved and the difficulties that may be associated with determining its applicability when the parties have not briefed the issue. It follows that we cannot say "to a legal certainty" that in any given case a res judicata defense will be applied. For that reason, the normal rules with respect to affirmative defenses and jurisdiction govern.

The dissent also relies on *Tongkook*, but *Tongkook* is readily distinguishable in that *Tongkook* involved no legal issue but only a factual question that all agreed had been incorrectly determined.

From the affirmative defense rule it follows that the district court's use of res judicata to reduce the "amount in controversy" was not permissible. That amount, for jurisdictional purposes, was the sum put in controversy by the plaintiff's complaint, without regard to the subsequently asserted defense of preclusion.[5]

### III.

It is not disputed that if liability for disability benefits from April 16, 1998 to November 19, 2001 is in controversy, then the jurisdictional amount requirement is satisfied. Nor is diversity of citizenship at issue. Accordingly, federal jurisdiction exists. The order of the district court granting Equitable's 12(b)(1) dismissal motion is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

TRAGER, District Judge (dissenting).

I respectfully dissent. The central question on this appeal is whether res judicata can be invoked on a 12(b)(1) motion to dismiss in order to prove to a "legal certainty" that the plaintiff's recovery will not exceed the $75,000 threshold required for diversity jurisdiction. Fed.R.Civ.P. 12(b)(1). The majority holds that it is inappropriate for the district court to employ res judicata in determining that the amount in controversy has not been met. The majority's ruling creates new law that conflicts with the precedents of this court, and rests upon the erroneous premise that res judicata is a waivable defense. Moreover, it leaves the "legal certainty" test devoid of any content or meaning. The majority opinion states:

> [It] may seem paradoxical: if it can be said 'to a legal certainty' that the defense in question is a winning defense, ought it not be considered for amount-in-controversy purposes? One plausible answer is that because affirmative defenses can be waived, the court cannot *at the time of filing* be certain that any given affirmative defense will be applied to the case.

*Ante*, at 398 (emphasis in original).

However, this rationale is not applicable to res judicata. Res judicata, unlike other defenses, can be raised by the district court *sua sponte* to determine that jurisdiction does not exist and is, therefore, equivalent to being non-waivable as the court and not the defendant is in control of the issue. Indeed, this court has held that "[t]he failure of a defendant to raise res judicata in [an] answer does not deprive a court of the power to dismiss a claim on that ground." *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir.1993). Accordingly,

---

**5.** The only other circuit to have published an opinion on this issue came to the same result as we would have, although explained in a slightly different way. *See Anderson v. Moorer*, 372 F.2d 747, 750 (5th Cir.1967) ("[T]he probability of a valid factual defense [here a defense of res judicata], is not sufficient to diminish the amount in controversy and oust the court of jurisdiction."). We do not foreclose the possibility that, in rare circumstances, the affirmative defense rule may admit of exceptions. One possible exception is suggested by the D.C. Circuit's opinion in *Dozier v. Ford Motor Co.*, 702 F.2d 1189 (D.C.Cir.1983) (Scalia, *J.*). Relying on the Supreme Court's instruction that "[t]he principles of res judicata apply to questions of jurisdiction as well as to other issues," *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932) (Brandeis, *J.*), *Dozier* holds that a federal court determination that a given claim cannot satisfy the amount in controversy requirement must be given preclusive effect. *See Dozier*, 702 F.2d at 1191, 1196. *Dozier* doesn't mention the affirmative defense rule. Where the nonexistence of jurisdiction has itself been determined in a prior action-such that application of the affirmative defense rule would deprive a jurisdictional determination of meaningful finality-*Baldwin* may require that the affirmative defense rule yield.

it was certainly appropriate where the issue had been raised by the defendant for the district court to apply res judicata in concluding to a "legal certainty" that the amount in controversy, when stripped of the portion precluded by res judicata, failed to meet the minimum jurisdictional amount of $75,000.[1]

It is well established law in this circuit that certain affirmative defenses, including res judicata, may be raised *sua sponte*. *See, e.g., Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir.1998) (affirming *sua sponte* application of collateral estoppel in motion for summary judgment); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir.1995) (affirming *sua sponte* dismissal under 28 U.S.C. § 1915(d) on statute of limitations grounds). In the case of *Salahuddin v. Jones*, 992 F.2d 447 (2d Cir.1993), this court has held that "the strong public interest in economizing the use of judicial resources by avoiding relitigation" provides strong justification for allowing a court to raise res judicata *sua sponte*, and that "[t]he failure of a defendant to raise res judicata in answer does not deprive a court of the power to dismiss a claim on that ground." *Id.* at 449. Moreover, in *Salahuddin*, this court held that "[d]ismissal of appellant's recycled

claims was not only appropriate but virtually mandatory ... whether or not the appellees raised res judicata in their answer." *Id.* Only by ignoring this well established rule can the majority conclude that res judicata cannot be used to wittle down the amount in controversy.

Even if there were an affirmative defense rule—which there is not—it would not apply in the case of those affirmative defenses that might be raised *sua sponte*. Since some affirmative defenses may be raised *sua sponte* as a basis for dismissing a case, it follows that those affirmative defenses are not automatically waived when the defendant fails to raise the defense in their answer. Thus, where the court at the outset of the case becomes aware that a claim was barred by res judicata at the time of the filing of the complaint, it cannot be said that the court cannot be certain that res judicata will be applied to the case since it is in the court's authority to do so. It would be completely illogical to extend to those affirmative defenses that may be raised *sua sponte* the rule precluding defenses from being considered in a 12(b)(1) motion to dismiss.

---

1. In determining the legal certainty of the recoverable amount, it is not contested that the district court was correct to proceed as it did even though an appeal was pending from that determination. Pursuant to 28 U.S.C. § 1738, a "federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) (discussing 28 U.S.C. § 1738). *See also Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir.2003); *Brooks v. Giuliani*, 84 F.3d 1454, 1463 (2d Cir.1996). Thus, even though the appeal was still pending when the suit was brought, the district court was correct to treat the New York state court judgment as final for res judicata purposes. *DiSorbo v. Hoy*, 343

F.3d 172 (2d Cir.2003) ("Under New York law, 'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.'") (quoting *Amica Mut. Ins. Co. v. Jones*, 85 A.D.2d 727, 728, 445 N.Y.S.2d 820, 822 (1981)). *See also Parkhurst v. Berdell*, 110 N.Y. 386, 392, 18 N.E. 123, 125–26 (N.Y. 1888).

While the majority correctly points out that the amount in controversy is to be determined as of the date of the complaint, the preclusionary effect of res judicata applies even if there is a pending appeal of the relevant judgment at the time of filing. Thus, the district court acted appropriately when it precluded on res judicata grounds the state court judgment rendered prior to the filing of this action.

The precedent cited by the majority, *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199 (2d Cir.1982), is not relevant to the case at hand. In that case, this court reversed the district court's dismissal of the suit for failure to meet the jurisdictional minimum on the ground that a valid defense does not deprive a federal court of jurisdiction. *Id.* at 202. In *Zacharia*, the challenge to jurisdiction was based on the substantive issue of whether the defendant's liability was limited by statute to an amount below the minimum statutory jurisdictional amount. *Id.* at 202–03. Nowhere does *Zacharia* discuss affirmative defenses, nor does it discuss the effect of res judicata on the amount in controversy requirement. The majority opinion also cites *Ochoa v. Interbrew Am., Inc.*, 999 F.2d 626 (2d Cir.1993), merely to quote the language in the Supreme Court decision in *St. Paul*, which states that "the fact that the complaint discloses the existence of a valid defense to the claim" is not sufficient in and of itself to show the plaintiff's bad faith or to oust the jurisdiction of the court. *Id.* at 628 (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)). But in *Interbrew*, the challenge to jurisdiction was based on the substantive issue of whether the contract in dispute was terminable at will. *Id.* at 627. The holding in *Interbrew* deals neither with affirmative defenses nor with res judicata, which is treated differently from other defenses for procedural purposes and the policy reasons noted above. At best, *Zacharia* and *Interbrew* can be read to invoke a rule precluding substantive defenses, but these cases do not support the rule articulated by the majority against considering all affirmative defenses.

Moreover, the majority claims that the district court incorrectly applied the "legal certainty" test which states that in order to "justify dismissal" of a claim for failing to satisfy the amount in controversy requirement, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul*, 303 U.S. at 288–89, 58 S.Ct. at 590, 58 S.Ct. 586 (1938) (quoted in *Wolde–Meskel v. Vocational Instruction Project Community Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). The majority states that there is a " 'rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy,' " and that "[t]o overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Ante*, at 397 (quoting *Wolde–Meskel*, 166 F.3d at 63). To the contrary, the district court acted properly.

First, the district court was not bound to the pleadings alone, for both the general rule relating to 12(b)(1) motions and the rule relating to evaluating good faith with respect to the alleged jurisdictional amount under *St. Paul* authorize this court to turn to materials outside the complaint to decide a challenge to jurisdiction under a 12(b)(1) motion. The general rule stated by Justice Douglas is that "when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, Fed. R.Civ.P. 12(b), the court may inquire, by affidavits or otherwise, into the facts as they exist." *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209 (1947) (citations omitted), *overruled on other grounds, Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).[2] *See also Robinson v.*

---

**2.** Despite significant changes to Rule 12(b) since the *Dollar* decision was handed down in

1947, the rule stated by Justice Douglas is still the law of this circuit. *Exchange Nat'l Bank*

*Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir.2001) ("A district court 'may' consult evidence to decide a Rule 12(b)(1) motion .... It 'must' do so if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction."). The general rule articulated by Justice Douglas is consistent with the view articulated in *St. Paul*, and more recently repeated by this court in *Chase Manhattan*, that

> [I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*Chase Manhattan Bank, N.A. v. American Nat'l Bank and Trust Co. Of Chicago*, 93 F.3d 1064, 1070 (2d Cir.1996) (quoting *St. Paul*, 303 U.S. at 289, 58 S.Ct. at 590 (1938)). Thus, this court is authorized to look beyond the complaint in determining whether there was a "like certainty that the plaintiff never was entitled to recover" the amount alleged. *See St Paul*, 303 U.S. at 289, 58 S.Ct. 586. Likewise, in *Zacharia*, this court "allowed ... resort to materials developed in discovery to be used to amplify the meaning of the complaint allegations" when applying the "legal certainty" test. *Zacharia*, 684 F.2d at 202 (2d Cir.1982).

Given that plaintiff summarized in the amended complaint the history of the dispute in New York courts with respect to this case, including the fact that "[t]he jury in that action returned a defendant's verdict," JA 104, ¶¶ 23–25, the district court acted correctly in considering the res judicata claim in ordering that the case be dismissed for lack of subject matter jurisdiction. Certainly, state court pleadings and transcripts used to amplify the reference to the "defendant's verdict" referred to in the complaint would constitute acceptable "proofs" to be used by the district court in determining that there was a "like certainty that the plaintiff never was entitled to recover" the alleged amount. Furthermore, if there were any doubt on this issue, it is appropriate for this court to affirm the district court by taking judicial notice of state court records which leave no doubt as to the correctness of the district court's determination. *See Rothenberg v. Security Management Co.*, 667 F.2d 958, 961 n. 8 (11th Cir.1982) (citing subsequent development in related state case and explaining that "[w]e are ... free to take judicial notice of subsequent developments in cases that are a matter of public record and are relevant to the appeal"); *Barrett v. Baylor*, 457 F.2d 119, 124 n. 2 (7th Cir.1972); *Bryant v. Carleson*, 444 F.2d 353, 357–58 (9th Cir.1971).

Moreover, the majority opinion is incorrect when it suggests that the cases of this court have set such "a high bar for overcoming [the face-of-the-complaint presumption]" that the appellee cannot overcome the face-of-the-complaint presumption in this case. *Ante*, at 397. In fact, in the decision cited by the majority to make the point that "the legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim," this court held that the case should be dismissed on the ground that it was "apparent ... 'to a legal certainty,' [that plaintiff] could not recover the requisite jurisdictional amount." *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir.1994) (quoted in *Chase Manhattan*, 93 F.3d at 1070–71 (2d

*v. Touche Ross and Co.*, 544 F.2d 1126, 1130– 1131 (2d Cir.1976) (Friendly, J.).

Cir.1996)). In *Tongkook*, while the amount claimed by plaintiff exceeded the jurisdictional minimum, and both parties believed this to be true when the complaint was filed, during the course of pre-trial discovery it become clear that the actual amount defendant owed plaintiff was below the jurisdictional amount. Despite this development, when the defendant moved for summary judgment, the district court retained subject matter jurisdiction. On appeal, this court vacated the judgment of the district court and remanded with instructions to dismiss the complaint because "[i]t [wa]s clear from the pre-trial record that Tongkook could not properly claim the required statutory jurisdictional amount, and this was true when the action was commenced, although the fact was not uncovered until discovery began." *Tongkook*, 14 F.3d at 785. The bar for overcoming the presumption of good faith in *Tongkook* was not so high as to prevent the court from overcoming the presumption in that case, and it should not be any higher in this instance. As this court has previously stated, " 'good faith' alone does not control where it is apparent that, 'to a legal certainty,' [plaintiff] could not recover the requisite jurisdictional amount." *Tongkook*, 14 F.3d at 785.

It should also be noted in this context that the *Tongkook* panel adopted the view that "[t]he fact that a mistake may have been honestly made in claiming the original amount could not convert what in the absence of the mistake would have been bad faith, into the kind of good faith necessary to vest jurisdiction in [the district court]." *Tongkook*, 14 F.3d at 786. A nonfrivolous argument, like an honest mistake, is not sufficient to prove the good faith necessary for jurisdiction when it is legally certain at the time of filing that such argument has no merit.

Furthermore, in this case, plaintiff's argument at the time of filing as to the period of liability adjudicated in state court may indeed have been frivolous. In this connection, counsel to plaintiff could not have been making his claim in good faith, for the record rightly before this court reveals that he had to know full well that the judge in the state court proceeding had given a charge that covered the period to the date of the trial but did not disclose this in his complaint. Plaintiff's counsel knew that his client was barred from recovering any damages up until the date of the verdict in the state case. Under New York law, appellant's conduct may well be sanctionable. N.Y.C.R.R. tit. 22, ch. I, § 130–1.1 (2003) ("[T]he court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct", which includes conduct that "is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law"). Yet under the majority's affirmative defense approach, counsel in similar cases can now in good faith file complaints in federal court since they are not required to assume that the defendant would plead an affirmative defense. The majority's approach is an invitation to lawyers to ignore the amount in controversy requirement (28 U.S.C. § 1332(a)) and undermines one of the principal purposes of the requirement by inviting plaintiffs into federal courts over matters with little economic consequence—precisely the outcome that the amount in controversy requirement is meant to prevent. *See* 14B C. Wright & A. Miller & E. Cooper, Federal Practice and Procedure § 3701, at 2–4 (3d ed. 1998) ("Congress' intent [in raising the threshold in 1989 to $50,000] was to reduce the number of diversity of citizenship cases in the federal courts ... [and] it seems reasonable to surmise that Congress again

was attempting to reduce the caseload in the federal courts [when the amount was increased in 1996 to $75,000]"). To allow this case to proceed based on the fiction that it crosses the $75,000 threshold is to undercut the objective of the amount in controversy requirement.

To conclude—at the heart of this case is the need to set proper boundaries for federal jurisdiction. As the Seventh Circuit has stated: "[T]here is necessarily a conflict between ready access to a federal court (the better to reduce costs in the immediate case) and rigorously enforcing the jurisdictional limits in marginal cases (the better to protect the interests of litigants whose claims are squarely within federal jurisdiction)." *Pratt Cent. Park Ltd. Partnership v. Dames and Moore*, 60 F.3d 350, 352 (7th Cir.1995) (Easterbrook, J.). In *Pratt*, the Seventh Circuit affirmed a decision by the district court to dismiss an action for damages against an engineering firm that performed an environmental risk assessment on the grounds that standby terms capping liability at $5,000 made recovery exceeding $5,000 unlikely. Recognizing the link between the jurisdictional conflict and the "legal certainty" test, *Pratt* stated that when applying the test "the judge must be allowed some time for legal research and inquiry" because "unless some effort to dispel the original state of ignorance is allowed, the limits on federal jurisdiction are unenforceable." *Id.* Thus, *Pratt* states that "the court gains under Rule 12(b)(1) some factfinding power that it lacks under Rule 56." *Id.* at 353.

The point to bear in mind is that dismissal of this claim does not deprive plaintiff of a day in court but merely allocates the controversy to state court. Scherer's action is precisely the kind of suit that the amount in controversy requirement was meant to keep out of federal court. The claim was appropriately dismissed by the district court based on lack of jurisdiction, and since Congress expressed an intent to limit diversity cases to ones involving significant amounts, it behooves this court to affirm the ruling of the district court below.

For these reasons, I respectfully dissent.