Muhammad SARFRAZ, M.D., Muhammed K. Qadri, M.D., and John Wang, M.D., Plaintiffs,

v.

VOHRA HEALTH SERVICES, PA, Defendant.

No. 09–cv–0168 (ADS)(ETB).

United States District Court, E.D. New York.

Oct. 20, 2009.

Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formata & Einiger, LLP, by Harry Chris Demiris, Esq., Of Counsel, Lake Success, NY, for Plaintiffs.

Bedell & Forman, LLP, by Jamie A. Forman, Esq., Of Counsel, New York, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

### I. BACKGROUND

Plaintiff Doctors Muhammad Sarfraz, M.D., Muhammed K. Qadri, M.D., and John Wang, M.D. contracted in May 2008 with Defendant Vohra Health Services, PA to provide medical care to nursing home residents in New York City and on Long Island. The parties are now engaged in a dispute concerning the plaintiffs' respective contracts with Defendant Vohra Health Services.

According to the plaintiffs' complaint, in May 2008 each of the plaintiffs executed an individual employment agreement with the defendant pursuant to which the signing

doctor was entitled to a base salary of $150,000, plus a bonus equal to "42% of collections to a cost center." Under these contracts, the doctors provided nursing home residents with "critical wound care." The parties do not describe the plaintiffs' medical practice in any additional detail, nor have they placed the relevant employment agreements before the Court. The plaintiffs have also alleged that their employment agreements with the defendant Vohra contained covenants requiring that:

> for the term of the [plaintiffs' employment agreement with the defendant], and for a period of twenty-four months after Plaintiffs' employment terminated, they would not directly or indirectly engage in the practice of wound care on behalf of any hospital, nursing home or other facility or medical practice within any of the following counties: Kings, Queens, New York, Nassau, and Suffolk or within thirty miles of any location where services have been provided as an employee of Vohra.

(Compl. at ¶ 19.) (The word "Plaintiff" appears in the complaint. No copy of the contract itself was annexed.)

It is also alleged by the plaintiffs that, in August 2008, the defendant informed the plaintiffs that their employment contracts were to be unilaterally altered so that the plaintiffs would no longer receive a salary, but instead be paid on a "fee for service" basis. The plaintiffs do not further describe the details of the "fee for service" payment scheme. The plaintiffs protested, and on October 3, 2008, the defendant stopped paying Drs. Sarfraz and Qadri entirely, and reduced its payments to Dr. Wang in accord with the new proposed pay system. Then, in November 2008, the defendant allegedly informed Drs. Sarfraz and Qadri that their "resignations were accepted," in spite of the fact neither had submitted a resignation.

The plaintiffs are seeking (1) damages for lost wages and (2) a declaratory judgment that the non-compete covenants in their employment contracts are not enforceable. The plaintiffs allege that there is federal jurisdiction pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332.

The defendant has not filed an answer in this case, but has, instead, moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. In particular, the defendant argues that the plaintiffs have not alleged sufficient damages to invoke federal diversity jurisdiction pursuant to Section 1332. The defendant supports its motion with evidence allegedly showing that the base salary owed to the plaintiffs is well below the jurisdictional threshold, and that the plaintiffs are owed no bonuses.

The plaintiffs oppose the defendant's motion on grounds of timeliness and substance.

## II. DISCUSSION

### A. As to the defendant's motion to dismiss: Timeliness

■ Federal District Courts are courts of limited jurisdiction, and, at all times, are obligated to be assured of their subject matter jurisdiction over matters before them. As the Second Circuit stated in *Durant, Nichols, Houston, Hodgson & Cortese–Costa P.C. v. Dupont*, 565 F.3d 56, 62–63 (2d Cir.2009):

> 'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). If subject matter jurisdiction is lacking and no party has called the mat-

ter to the court's attention, the court has the duty to dismiss the action sua sponte. *See, e.g., Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)

■ Here, the plaintiffs argue that the defendant's motion was made fifteen days after the defendant's deadline to answer the complaint, and is therefore untimely and should be denied. While it appears that the defendant did not move or answer by its deadline, the plaintiffs' objection is nonetheless without merit. Given the Court's responsibility to be assured at all times of its subject matter jurisdiction, the time at which the defendant filed its motion to dismiss for lack of subject matter jurisdiction does not affect the Court's review.

## B. Amount in controversy

■ The plaintiffs have alleged that federal subject matter jurisdiction is proper in the present case pursuant to diversity jurisdiction under Section 1332, which provides in pertinent part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States.

Each of the plaintiffs is a New York citizen and the defendant is a Florida citizen, thus satisfying the requirement that the parties be citizens of different states. However, the defendant claims that the matter in controversy between the parties does not exceed $75,000 as required by Section 1332, thus precluding federal diversity jurisdiction.

The Second Circuit has set forth a multipart test by which the Court determines whether to grant a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for failure to allege a sufficient amount in controversy.

First, "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook America, Inc.,* 14 F.3d at 784 (citing *Moore v. Betit,* 511 F.2d 1004, 1006 (2d Cir.1975)). However, unlike certain other jurisdictional determinations where the Court makes a substantive inquiry into the facts underlying jurisdiction, the Court treats the face of a complaint as a "good faith representation of the actual amount in controversy," establishing a presumption that the amount alleged is the actual amount in controversy. *Scherer v. Equitable Life Assurance Society of U.S.,* 347 F.3d 394, 397 (2d Cir.2003).

A party may overcome this presumption only by showing " 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Id.* (Citing to *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 63 (2d Cir.1999) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–289, 58 S.Ct. 586, 82 L.Ed. 845 (1938))). This rule is applicable because, in the interests of judicial economy, the time for the factual determination of a plaintiff's recovery is generally at the trial, not in preliminary proceedings. See *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982) ("The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits.").

While the Second Circuit has held that the record before the Court may be used to "amplify the meaning of the complaint allegations," *id.,* it has also held that "affirmative 'defenses on the merits' may not be used to whittle down the amount in controversy." *Scherer,* 347 F.3d at 397. Significantly, doubt concerning the value of relief

sought by a plaintiff should be resolved in the plaintiff's favor. *Tongkook America, Inc.,* 14 F.3d at 785.

Additional rules apply to the Court's calculation of the amount in controversy. First, the plaintiffs may not aggregate their individual claims to reach the diversity jurisdiction threshold. *See Airlines Reporting Corp. v. S and N Travel, Inc.,* 857 F.Supp. 1043, 1049 (E.D.N.Y.1994). However, a single plaintiff may aggregate multiple state law claims to satisfy the requirement. *Colavito v. New York Organ Donor Network, Inc.,* 438 F.3d 214, 221 (2d Cir.2006) ("Different state claims brought by a single plaintiff may be aggregated for purposes of satisfying the amount in controversy requirement."). Regarding the valuation of equitable claims, "[t]he Supreme Court has held that, in actions for declaratory or injunctive relief ... the amount in controversy is measured by the value of the object of the litigation." *DiTolla v. Doral Dental IPA of New York,* 469 F.3d 271, 276 (2d Cir.2006) (citing *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). As to timing, the Court analyzes the amount in controversy as of the date the complaint was filed. See *Tongkook America, Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir.1994).

The Court therefore first considers whether the plaintiffs have alleged an amount in controversy in excess of $75,000. Except for a boilerplate claim that "the matter in controversy exceeds $75,000 exclusive of interest and costs," the plaintiffs do not specifically allege the amount of damages owed to it or the value of its equitable claims. The plaintiffs' boilerplate claim of damages provides little assistance to the Court in analyzing its jurisdiction. See, e.g., *Battaglia v. Penske Truck Leasing Co., L.P.,* No. 08 CV 2623(SLT)(SMG), 2008 WL 2946009, *2 (E.D.N.Y. July 29, 2008) ("Courts confronting complaints without ad damnum clauses or only perfunctory allegations regarding the plaintiff's damages have 'repeatedly found [such complaints] too vague and ambiguous to enable an intelligent assessment of whether the amount in controversy requirement of diversity jurisdiction has been satisfied.'" (internal citations omitted)). Thus, the Court must review the facts the plaintiffs have alleged to determine whether any of the plaintiffs are alleging facts justifying damages that would satisfy the amount in controversy threshold.

The plaintiffs assert three bases for monetary damages: (1) compensatory damages for base salaries not paid, (2) compensatory damages for bonuses not paid, and (3) liquidated damages based on violations of the New York Labor Law. In addition, the plaintiffs claim an equitable right to a declaratory judgment that the non-compete covenants in the plaintiffs' employment contracts are unenforceable.

It is not clear that the plaintiffs have satisfied the jurisdictional threshold based on their claims for monetary damages. The plaintiffs' allegations of the remuneration owed them are vague at best. The plaintiffs allege that they are entitled to a salary of $150,000 and a bonus equal to "42% of collections," but fail to allege any additional details related to their compensation. Nor do they place the relevant agreements before the Court. The plaintiffs fail to allege the period of time for which they claim they are entitled to be paid, and fail to allege the monetary value of their bonuses in even the most general terms. To be sure, the Court is obligated to resolve all doubt concerning the value of the damages alleged in favor of the plaintiffs. *Scherer,* 347 F.3d at 397. Fortunately, the Court need not decide this par-

ticular issue because the Court finds that the plaintiffs' claims for declaratory judgment satisfy the amount in controversy threshold.

The plaintiffs seek a declaratory judgment that the non-compete covenants in their employment contracts are not enforceable. In arriving at a value with regard to this equitable remedy, the Court views the non-compete provisions the plaintiffs seek to annul as relatively broad. If enforced as alleged, each plaintiff would be barred for two years from providing "wound care" in any medical practice in all of New York City and Long Island, plus any area within 30 miles of the facilities at which the individual plaintiff worked under the auspices of the defendant. Solely for the purpose of determining jurisdiction, the Court finds that the non-compete agreements, as alleged, could cause the plaintiffs substantial hardship and loss of compensation in finding alternative employment. It is entirely plausible that enforcement of this provision could cost each plaintiff more than $75,000 in salary over the period set forth in the contracts. Resolving any doubt concerning the value of the relief sought in favor of the plaintiffs, the Court finds that each plaintiff has alleged an amount in controversy greater than $75,000. *See, id.,* 347 F.3d at 397 ("'[E]ven where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted' *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir. 1982)").

The plaintiffs having alleged a matter in controversy greater than $75,000, the Court must also consider whether the defendant has shown, to a legal certainty, that the value of the plaintiffs' potential recovery does not meet the jurisdictional threshold. *Id.* at 397. The Court finds nothing in the defendants submissions that would meet this particularly high burden. Indeed, the defendant failed to address the value of the plaintiffs' equitable relief in its Motion to Dismiss.

Accordingly, the Court denies the defendant's motion to dismiss in its entirety.

## III.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the defendant's motion to dismiss the plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(1) is DENIED.

**SO ORDERED.**