Jeffrey ZINK, on behalf of himself and all others similarly situated, Plaintiff,

v.

**FIRST NIAGARA BANK, N.A., Defendant.**

**13–CV–1076A**

United States District Court, W.D. New York.

Signed 01/12/2016

D. Gregory Blankinship, Jeremiah Frei–Pearson, Todd S. Garber, Shin Young Hahn, Finkelstein Blankinship Frei–Pearson & Garber LLP, White Plains, NY, for Plaintiff.

Jeffrey Thomas Fiut, Cynthia Giganti Ludwig, Jodyann Galvin, Hodgson Russ LLP, Buffalo, NY, for Defendant.

## DECISION AND ORDER

HONORABLE RICHARD J. ARCARA, UNITED STATES DISTRICT COURT

The above-referenced case was referred to Magistrate Judge Jeremiah J. McCarthy, pursuant to 28 U.S.C. § 636(b)(1)(B). On October 20, 2015, Magistrate Judge McCarthy filed a Report and Recommendation (Dkt. No. 94), recommending that plaintiff's uncontested Motion for Settlement (Dkt. No. 92) be denied. Per the Court's November 5, 2015 text order, the parties had until December 10, 2015 to file objections, if any, to Magistrate Judge McCarthy's report and recommendation. As of today's date, neither party has filed objections or requested additional time to do so.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties, and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), Judge McCarthy's Report and Recommendation is adopted in its entirety, and plaintiff's Motion for Settlement is denied.

The case is referred back to Magistrate Judge McCarthy for further proceedings.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

JEREMIAH J. McCARTHY, United States Magistrate Judge

Before me is plaintiff's uncontested motion seeking conditional certification of a

proposed settlement class and preliminary approval of a class action settlement pursuant to Fed.R.Civ.P. ("Rule") 23[92] (the "Uncontested Motion").[1] That motion, being dispositive (28 U.S.C. § 636(b)(1)(A)), has been referred to me by Hon. Richard J. Arcara for a Report and Recommendation [38]. For the following reasons, I recommend that the Uncontested Motion be denied, without prejudice to renewal upon a showing of further facts demonstrating the existence of subject matter jurisdiction and justifying the relief requested.

## BACKGROUND

### Procedural History

Plaintiff Jeffrey Zink commenced this action on July 19, 2013, seeking to recover class penalties from First Niagara pursuant to New York's Real Property Law ("RPL") § 275(1) and Real Property Actions and Proceedings Law ("RPAPL") § 1921(1), for its allegedly "systematic failure to timely present to the county clerks of New York State proof that mortgages have been satisfied". Complaint [1], ¶ 1; Amended Complaint [21], ¶ 1.

Both statutes contain the following provision: "Failure by a mortgagee to present a certificate of discharge for recording shall result in the mortgagee being liable to the mortgagor in the amount of five hundred dollars if he or she fails to present such certificate within thirty days [after payment] . . . in the amount of one thousand dollars if he or she fails to present a certificate of discharge for recording within sixty days and . . . in the amount of one thousand five hundred dollars if he or she fails to present a certificate of discharge for recording within ninety days."

The proposed class was defined as: "All persons who were the mortgagor party to a mortgage held by First Niagara, N.A. secured by real property located in New York State for which the principle, interest and all other amounts due or otherwise owed was completely paid after July 19, 2007 but Defendant failed to present a certificate of discharge or satisfaction of mortgage within 30 days to the recording officer of the county where the mortgage was recorded." Complaint ¶ 16; Amended Complaint [21], ¶ 20.

First Niagara moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) [37], arguing that Zink's statutory claims are preempted by the National Banking Act ("NBA"), 12 U.S.C. § 1, *et seq.*, and a regulation promulgated thereunder by the Office of the Controller of the Currency ("OCC"), 12 C.F.R. § 34.4(a)(10) (First Niagara's Memorandum of Law [37–1], Point I); that Zink lacked standing to pursue his claims because his satisfaction of mortgage had already been recorded (*id.*, Point II); and finally, that Zink failed to properly allege that First Niagara violated RPL § 275 or RPAPL § 1921 (*id.*, Point III).

Before addressing the merits of that motion, I raised *sua sponte* the issue of whether diversity jurisdiction exists: "Although First Niagara's motion does not raise this issue, I have an independent obligation to determine whether this court has jurisdiction to proceed. *See Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011) ('Courts do not usually raise claims or arguments on their own. But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either

---

1. Bracketed references are to CM/ECF docket entries.

overlook or elect not to press')." Amended Report and Recommendation [51], p. 3.

I noted that "Zink alleges that '[j]urisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d)(2)(A), as minimal diversity exists, there are more than 100 Class members, some of whom are not citizens of New York State, and the amount in controversy is in excess of $5 million'. Amended Complaint [12], ¶ 5. Although no class has yet been certified, 28 U.S.C. § 1332(d)(8) provides that '[t]his subsection shall apply to any class action before or after the entry of a class certification order'. Therefore; resolution of the issue of diversity jurisdiction must await the determination of whether any members of the proposed class are citizens of states other than New York, whether there are at least 100 members in the class, and whether the amount in controversy exceeds $5 million. Since those determinations have not yet been made, I may not dismiss the action at this time for lack of diversity jurisdiction, for 'where the issue of subject matter jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the court should ... dismiss for lack of jurisdiction only where no triable issues of fact exist'. *Hamm v. United States*, 439 F.Supp.2d 262, 264 (W.D.N.Y.2006) (Larimer, J.), *aff'd*, 483 F.3d 135 (2d Cir.2007). 'This doctrine is applicable ... before adequate discovery has been completed, and when conflicts of fact exist.' *Id.*" Amended Report and Recommendation [51], pp. 3–4. However, I cautioned that "should it subsequently be determined that the minimal diversity requirements of § 1332(d)(2)(A) have not been satisfied, then this action must be dismissed for lack of subject matter jurisdiction". *Id.*, p. 4.

After analyzing the arguments raised by First Niagara, I recommended that its motion to dismiss be denied. *Id.*, p. 17. That recommendation was adopted by Judge Arcara [59] (reported at 18 F.Supp.3d 363 (W.D.N.Y.2014)). First Niagara then alleged lack of subject matter jurisdiction as a defense in its Answer ([62], ¶ 36) and Amended Answer ([83], ¶ 36). It also alleged that "the claims of any putative class are barred, in whole or in part, by a three year statute of limitations". Amended Answer [83], ¶ 45.

Thereafter, the parties engaged in "extensive and hard-fought litigation, which included motion practice and substantial discovery, and after extended settlement negotiations that commenced with a mediation before mediator David Geronemus, Esq. of JAMS and that continued for two additional months, [the parties] have agreed to settle this action". Plaintiff's Memorandum of Law [92–1], p. 1.[2]

**Terms of the Proposed Settlement**

The proposed Settlement Class is defined as: "All persons who were the mortgagor party to a mortgage held by First Niagara, N.A. secured by real property located in New York State for which the principle, interest and all other amounts due or otherwise owed was completely paid after July 19, 2007 but Defendant failed to present a certificate of discharge or satisfaction of mortgage within 30 days to the recording officer of the county where the mortgage was recorded." Plaintiff's Memorandum of Law [92–1], p. 6. While the "class period" runs from July 19, 2010 to November 14, 2014 (Settlement Agreement and Release [92–3], § 2.06), the Uncontested Motion does not explain

---

**2.** 28 U.S.C. § 1715 requires that First Niagara provide notice of the proposed settlement to "appropriate state and federal officials".

The Uncontested Motion does not indicate whether this has been done.

why the class is cut off as of the latter date.

"[T]here are 5010 members of the Settlement Class, 2792 for whom certificates of discharge were presented more than thirty but less than sixty-one days late, 1137 for whom certificates of discharge were presented more than sixty but less than ninety-one days late, and 1081 for whom certificates of discharge were presented more than ninety days late." Plaintiff's Memorandum of Law [92–1], p. 5. "First Niagara has agreed to pay up to $2.2 million dollars to pay claims made by class members, the costs of administering the proposed settlement, and Plaintiff's counsel's costs and fees. Class members who make claims will receive substantial cash payments: up to $250 for mortgagors whose certificates were presented more than 30 days after satisfaction; up to $500 for mortgagors whose certificates were presented more than 60 days after satisfaction; and up to $750 for mortgagors whose [certificates were] presented more than 90 days after satisfaction." Id., p. 1. "Claimants will receive these amounts unless the number of claims is such that their payment would exceed the Settlement Fund after costs and fees have been deducted. In that event, the awards paid to each Claimant will be proportionally reduced to prevent the total Settlement Fund from exceeding $2.2 million." Id., p. 7.

"The Parties estimate that the cost of notice and administration will be approximately $30,000 to $50,000, and Defendant has agreed not to contest an application by Plaintiffs counsel to the Court for an award of costs and fees equal to one third of the Settlement Fund." Id., p. 6. "Defendant has also agreed to pay and incentive award to Plaintiff in the amount of ... $5000 in recognition of his time and effort

in this action, subject to Court approval." Id.

## ANALYSIS

### A. Does The Court Have Jurisdiction to Consider This Motion?

Plaintiff argues that "[t]he Settlement Agreement should be preliminarily approved because Plaintiff faces substantial hurdles in establishing liability.... In particular, first Niagara consistently and vigorously argued that the Court lacked subject matter jurisdiction under 28 U.S.C. § 1332(d) because the amount in controversy did not exceed five million dollars, and this Court noted that this was an open issue." Plaintiff's Memorandum of Law [92–1], pp. 11–12.

However, uncertainty as to subject matter jurisdiction cannot be treated merely as a factor to be weighed in the settlement equation. Unless subject matter jurisdiction is established, I cannot even consider the Uncontested Motion, much less approve it. "Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action." *Cave v. East Meadow Union Free School District*, 514 F.3d 240, 250 (2d Cir.2008) (*citing* Rule 12(h)(3)).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). While it was appropriate to defer determination of that issue "before adequate discovery ha[d] been completed" (*Hamm*, 439 F.Supp.2d at 264), now that the parties have "en-

gaged in extensive discovery" and have "investigated the facts and analyzed the relevant legal issues" (plaintiff's Memorandum of Law [92–1], pp. 6, 11), the question is ripe for determination.

■ Plaintiff asserts that the maximum class recovery if the claims of the potential settlement class were fully litigated would be $4,154,500 (plaintiff's Memorandum of Law [92–1], p. 14), which is below the $5 million "amount in controversy" threshold of 28 U.S.C. § 1332(d)(2). However, "we measure the amount in controversy as of the date of the complaint. Once jurisdiction has attached, it cannot be ousted by subsequent events." *Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 397 (2d Cir.2003).

■ At the time the action was commenced, the proposed class included those whose mortgages were "completely paid after July 19, 2007". Complaint [1], ¶ 16. By contrast, the proposed settlement class is limited to those whose mortgages were "completely paid after July 19, 2010" (plaintiff's Memorandum of Law [92–1], p. 5), presumably because First Niagara asserted a three-year statute of limitations defense. If the maximum potential recovery by a class dating back to July 19, 2010 would exceed $4.1 million, it would not be unreasonable to assume that the maximum potential recovery by a class dating back to July 19, 2007 would exceed $5 million.

■ The fact that the amount in controversy was subsequently narrowed by First Niagara's statute of limitations defense is irrelevant to the jurisdictional determination, since "affirmative defenses asserted on the merits may not be used to·whittle

down the amount in controversy". *Scherer*, 347 F.3d at 397. *See also Smith v. Manhattan Club Timeshare Association, Inc.*, 944 F.Supp.2d 244, 252 (S.D.N.Y. 2013) ("Smith attempts to rebut Defendants' showing by arguing that it must be presumed that if class certification was granted, the amount in controversy would be reduced by affirmative defenses, including the statute of limitations. . . . In this Circuit, it is well-established that affirmative defenses asserted on the merits may not be used to whittle down the amount in controversy").

■ Since "the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold", *Scherer*, 347 F.3d at 397, I cannot agree with plaintiff's assertion that the amount in controversy poses a "substantial hurdle" to establishing liability. In addition, plaintiff has demonstrated that there are at least 100 members of the proposed class, as required by 28 U.S.C. § 1332(d)(5)(B).

■ However, in order to establish subject matter jurisdiction, he must also submit evidence demonstrating that "as of the date of filing the complaint or amended complaint" (28 U.S.C. § 1332(d)(7)), the citizenship at least one member of the potential class was adverse to that of First Niagara,[3] as required by 28 U.S.C. § 1332(d)(2)(A). If plaintiff fails to make that showing, then "all . . . motions on the case become moot and the case must be dismissed". *Pineros Y Campesinos Unidos del Noroeste v. Goldschmidt*, 790 F.Supp. 216, 219 (D.Or.1990).

---

**3.** "First Niagara's corporate headquarters are in Buffalo, New York". Amended Complaint [21], ¶ 8; Amended Answer to Amended Complaint [83], ¶ 8. "[A] national bank is a citizen only of the state in which its main office is located, and not the state in which its principal place of business is located, if that state differs from the location of its main office." *Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F.Supp.2d 312, 313 (S.D.N.Y.2006).

Assuming (for now) that plaintiff will be able to establish the existence of subject matter jurisdiction, I will address the Uncontested Motion.

## B. May the Proposed Class be Conditionally Certified?

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied.... Thus, the court must assess whether the proposed class satisfies Rule 23(a)'s four threshold requirements: (1) numerosity ('the class is so numerous that joinder of all members is impracticable'), (2) commonality ('there are questions of law or fact common to the class'), (3) typicality ('the claims or defenses of the representative parties are typical of the claims or defenses of the class'), and (4) adequacy of representation ('the representative parties will fairly and adequately protect the interests of the class')." *In re American International Group, Inc. Securities Litigation,* 689 F.3d 229, 238 (2d Cir.2012).

### 1. Rule 23(a)(1): Numerosity

██ Since "numerosity is presumed at a level of 40 members", *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995), I conclude that, irrespective of the precise parameters of the class, the numerosity requirement is satisfied.

### 2. Rule 23(a)(2): Commonality

██ "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997). Since the question of the applicability of the statutory penalties applies to all members of the class, this requirement is satisfied.

### 3. Rule 23(a)(3): Typicality

██ "Typicality ... requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.,* 126 F.3d at 376. Based on the claims and the single jurisdictional defense discussed in the Uncontested Motion, this requirement appears to be satisfied.

### 4. Rule 23(a)(4): Adequacy of Representation

Plaintiff argues that "there is no indication that [he] has any interests antagonistic to the Settlement Class. To the contrary, [he] has been actively protecting the interests of the class". Plaintiff's Memorandum of Law [92–1], p. 19. However, for reasons discussed later in this opinion [pp. 14–21, *infra*], I have concerns in that regard.

### Rule 23(b)(3)

"Not only must each of the requirements set forth in Rule 23(a) be met, but certification of the class must also be deemed appropriate under one of the three subdivisions of Rule 23(b)." *Brown v. Kelly,* 609 F.3d 467, 475–76 (2d Cir.2010). Plaintiff argues that "the settlement class satisfies Rule 23(b)(3) because "common questions predominate over individual issues", and that "a class action is a superior method of adjudicating this case". Plaintiff's Memorandum of Law [92–1], pp. 20–21.

Plaintiff alleges that he "obtained significant third party discovery from National Title Clearing, Inc. ('NTC'), the vendor that prepared and presented the majority of the certificates of discharge at issue"

(plaintiff's Memorandum of Law [92–1], p. 2), and that "NTC's data production demonstrates that there are 5010 members of the Settlement Class, 2792 for whom certificates of discharge were presented more than thirty but less than sixty-one days late, 1137 for whom certificates of discharge were presented more than sixty but less than ninety-one days late, and 1081 for whom certificates of discharge were presented more than ninety days late". *Id.*, p. 5.

Plaintiff asserts that "every issue involved in the litigation is subject to common and generalized proof, to wit, the NTC data which identifies not only each class member but their respective statutory damages". *Id.*, p. 20. While that argument supports certification, it calls into question the reasonableness of the proposed settlement. *See* pp. 1721, *infra*.

### C. Is There Probable Cause to Believe That the Proposed Settlement is Fair, Adequate and Reasonable?

▮ While there is a "strong judicial policy in favor of settlements, particularly in the class action context", *McReynolds v. Richards–Cantave*, 588 F.3d 790, 803 (2d Cir.2009), courts "must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness ... and that it was not a product of collusion." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.2001). Since the court acts "as a fiduciary serving as a guardian of the rights of absent class members", *In re Agent Orange Product Liability Litigation*, 597 F.Supp. 740, 758 (E.D.N.Y.1984), *aff'd*, 818 F.2d 145 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988), it must "exercise its independent judgment to protect the interests of class absentees". *In re Traffic Executive Association–Eastern Railroads*, 627 F.2d 631, 634 (2d Cir.1980).

▮ The Uncontested Motion requests only preliminary, not final, approval of the settlement. Preliminary approval "is not tantamount to a finding that the settlement is fair and reasonable. It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness". *Traffic Executive Association*, 627 F.2d at 634; *Chambery v. Tuxedo Junction Inc.*, 10 F.Supp.3d 415, 419 (W.D.N.Y.2014) (Wolford, J.). "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Davis v. J.P. Morgan Chase & Co.*, 775 F.Supp.2d 601, 607 (W.D.N.Y.2011) (Larimer, J.).

▮ "That said, preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement.... Indeed, the Court must be particularly scrupulous because preliminary approval establishes an initial presumption of fairness." *Martin v. Cargill, Inc.* 295 F.R.D. 380, 383–84 (D.Minn.2013); *Cullan and Cullan LLC v. M–Qube, Inc.*, 2014 WL 347034, *8 (D.Neb.2014). "Only careful review of a proposed settlement can discharge this obligation.... The task is demanding because the adversariness of litigation is often lost after the agreement to settle." *Martin*, 295 F.R.D. at 383–84. "If a proposed settlement appears obviously deficient, the ruling should be issued before rather than after the parties incur the administrative expense to publish notice to the class and handle any objections." *In re National Football League Players' Concussion Injury Liti-*

*gation,* 961 F.Supp.2d 708, 715 (E.D.Pa. 2014).

■ "The starting place for understanding the substantive requirements for preliminary approval is in reviewing the substantive requirements for *final* approval." Rubenstein, *Newberg on Class Actions,* § 13:15 (5th ed.2015) (emphasis in original). In the Second Circuit, "there are nine factors that should be considered in determining the fairness of a proposed settlement: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1323–24 (2d Cir.1990).

"[T]he court should consider the totality of these factors in light of the particular circumstance." *In re Global Crossing Securities and ERISA Litigation,* 225 F.R.D. 436, 456 (S.D.N.Y.2004). Therefore, each factor will be addressed:

## Factor 1: The Complexity, Expense and Likely Duration of the Litigation

■ Plaintiff argues that "[t]he Settlement Agreement provides substantial monetary benefits to the Settlement Class while avoiding the significant expenses and delays attendant to motion practice related to summary judgment and class certification, not to mention trial. Indeed, '[m]ost class actions are inherently complex and

settlement avoids the costs, delays and multitude of other problems associated with them.' *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184–85 (W.D.N.Y. 2005).... While Plaintiff is confident that he will prevail on class certification and summary judgment, such a result is not certain." Plaintiff's Memorandum of Law [92–1], p. 10.

I do not find that argument persuasive. *See Martin,* 295 F.R.D. at 385 ("Plaintiffs assert, for example, that they are convinced their case has merit, but recognize substantial risk is involved in continued litigation.... But they offer no specifics. Rather, they simply assert the expense and length of continued proceedings and the uncertain outcome and risk of litigation, as well as the difficulties and delays inherent in such litigation, render the settlement in the class's best interest.... Yet, the same is true in nearly every class action").

## Factor 2: The Reaction of the Class to the Settlement

■ Plaintiff argues that "[w]hile the reaction of absent class members cannot be conclusively gauged until notice has been sent, the fact that Plaintiff and his experience counsel support the Settlement Agreement is a strong indication that members of the Settlement Class will also view it positively." Plaintiff's Memorandum of Law [92–1]. I do not accept that assertion at face value, for "[o]nce the named parties reach a settlement in a purported class action, they are always solidly in favor of their own proposal". *Kakani v. Oracle Corp.,* 2007 WL 1793774, *1 (N.D.Cal.2007).

The fact that plaintiff and his attorneys support the settlement is hardly surprising, given that they both stand to gain significantly more from the settlement than other class members. In addition to

his own share of the recovery (up to $750), plaintiff will ask this court to approve a $5,000 incentive payment—more than six times what any other class member would be able to recover—for "having consistently conferred with his counsel, reviewed the complaint, reviewed and signed his interrogatory responses, provided substantial documents, and consulted with his counsel regarding the propriety of the settlement". Blankinship Declaration [92–2], ¶ 11.

 Without prejudging plaintiff's entitlement to an incentive payment, that request gives me pause. "Payments to class representatives, while not foreclosed, should be closely scrutinized", *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F.Supp.3d 573, 580 (S.D.N.Y.2015), for "when representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised". *In re Western Union Money Transfer Litigation*, 2004 WL 3709932, *16 (E.D.N.Y.2004). "Settlements entailing disproportionately greater benefits to named parties are proper only when the totality of circumstances combine to dispel the cloud of collusion which such a settlement suggests." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1219 (S.D.Fla.2006). *See also Pokorny v. Quixtar Inc.*, 2011 WL 2912864, *2 (N.D.Cal. 2011) ("while a motion for incentive payments is not currently before the Court, the disproportion between the incentive payments counsel intend to request and the likely average recovery of class members calls into question the fairness of the settlement").

 I am likewise concerned by counsel's proposed fee application. "[T]he duty to investigate the provisions of the suggested settlement includes the obligation

to explore the manner in which fees of class counsel are to be paid and the dollar amount for such services." *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir.1998). Counsel plans to apply for "an award of costs and fees equal to one third of the Settlement Fund" of $2.2 million. Plaintiff's Memorandum of Law [92–1], p. 6. The fact that First Niagara has agreed not to contest that application (*id.*) is of little significance, in view of "the economic reality that a settling defendant is concerned only with its total liability. . . . [T]he allocation between the class payment and the attorneys' fees is of little or no interest to the defense". *Strong*, 137 F.3d at 849–50.

 Section 5.01 of the Settlement Agreement and Release [92–3] states that any unclaimed funds "shall revert back to First Niagara". Therefore, "the extent of the defendant's liability is wholly dependant upon the number of claims, the cost of administering the settlement and such fees and expenses as are assessed by the Court". *Parker v. Time Warner Entertainment Co., L.P.*, 631 F.Supp.2d 242, 266, 267 (E.D.N.Y.2009). In such circumstances, counsel should "not indulge the temptation to claim fees as a proportion of the full recovery that could theoretically be made by all . . . class members. Rather . . . the liability of the defendant is a function of the claims made pursuant to the settlement, not the establishment of a fixed fund". *Id.* Therefore, if the fee is to be calculated as a percentage of the settlement, "the settlement should be valued on the basis of the number of claims that were made against it". *Id.*[4] See also *Pokorny*, 2011 WL 2912864, *1 (preferring "[a] settlement structure that tethers class counsel's fee award to the number of claim forms actually submitted by the class").

---

**4.** Even if I were to consider awarding fees based on percentage of recovery, I would cross-check that determination by reference

to counsel's contemporaneous time records. *See Augustyniak v. Lowe's Home Center LLC*, 102 F.Supp.3d 479, 490 (W.D.N.Y.2015).

To their credit, plaintiff and counsel agree that the settlement is not contingent upon approval of their requests for an incentive payment and attorney's fees. *See* Settlement Agreement and Release [92–3], § § 5.04(b), (e). However, the amounts requested cause me to question the extent to which their interests are aligned with the interests of the class.

### Factor 3: The Stage of the Proceedings and the Amount of Discovery Completed

Plaintiff asserts that "[t]he legal issues in this case have been thoroughly vetted.... Moreover, Plaintiff and Defendant have engaged in extensive discovery." Plaintiff's Memorandum of Law [92–1], pp. 10–11. "To approve a proposed settlement ... it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement". *Id.,* p. 11. However, the question is whether the Uncontested Motion provides enough information to enable me to make that intelligent appraisal.

### Factor 4: The Risks of Establishing Liability

Plaintiff sends mixed signals as to this factor, stating on the one hand that he is "confident that he will prevail on class certification and summary judgment" (*id.,* p. 10), but that "[o]n the other hand, Defendant could prevail on its legal arguments to defeat liability entirely, resulting in no recovery for class members". *Id.,* p. 14.

Plaintiff states that "NTC's data production demonstrates that there are 5010 members of the Settlement Class, 2792 for whom certificates of discharge were pre-

sented more than thirty but less than sixty-one days late, 1137 for whom certificates of discharge were presented more than sixty but less than ninety-one days late, and 1081 for whom certificates of discharge were presented more than ninety days late". *Id.,* p. 5. Nothing more should be required to establish liability for penalties under the statutes at issue. "RPL § 275 and RPAPL § 1921 both clearly state that liability for penalties arises upon the mortgagor's 'failure' to timely present the mortgage discharge for filing. Where the Legislature wished to condition a penalty upon a showing of 'willful failure', it said so.... It did not do so here, and I may not add to a statute language not employed by the Legislature." *Zink,* 18 F.Supp.3d at 372–73.

The only defense which plaintiff specifically discusses is lack of subject matter jurisdiction: "In particular, First Niagara insistently and vigorously argued that the Court lacked subject matter jurisdiction" (plaintiff's Memorandum of Law [92–1], p. 12); "[s]uch a substantial recovery merits approval of the proposed settlement, particularly in light of Defendant's jurisdictional defense". *Id.,* p. 13. However, First Niagara's assertion of the jurisdictional defense has been neither "consistent" nor "vigorous". In fact, it did not initially assert the defense—instead, I raised the question *sua sponte.* Amended Report and Recommendation [51], p. 3. Moreover, it has never moved to dismiss this action (in which it is now prepared to pay $2.2 million) on that ground. Since such a motion, if successful, would insulate it from class liability altogether,[5] First Niagara's failure make that motion strongly suggests its belief that the jurisdictional defense lacks merit—and, for reasons previously discussed, I share that belief.

---

**5.** Class relief would be foreclosed in state court. *See* N.Y.C.P.L.R. § 901(b) ("Unless a statute creating or imposing a penalty, or a

minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum

Plaintiff cannot have it both ways: if he is unable to prove that subject matter jurisdiction exists, then I cannot consider this motion, and the action must be dismissed; but if he can prove its existence, then the jurisdictional defense is inapplicable, and cannot justify reducing the class members' potential recovery.

Other than the jurisdictional defense, plaintiff points to no specific defenses which might preclude liability,[6] which makes it impossible to properly assess whether "the proposed plan is rationally related to the relative strengths and weaknesses of the respective claims asserted". *Danieli v. International Business Machines Corp.*, 2009 WL 6583144, *5 (S.D.N.Y.2009). *See Martin*, 295 F.R.D. at 385 ("the parties have provided nothing but generalities about the relative strengths and weaknesses of the class's claims and Cargill's potential defenses.... But they offer no specifics"); *Brown v. Sega Amusements, U.S.A., Inc.*, 2015 WL 1062409, *4 (S.D.N.Y.2015) ("The parties offer no viable way to gauge the reasonableness of the Settlement Agreement, and, therefore, the Settlement Agreement appears to be outside 'the range of possible approval'.... What specifically were the risks of this litigation?").

### Factors 5–7: The Risks of Establishing Damages, Maintaining the Class Action Through the Trial, and the Ability of First Niagara to Withstand a Greater Judgment

Plaintiff states that he "does not anticipate significant hurdles in proving each

measure of recovery created or imposed by statute may not be maintained as a class action").

6. Plaintiff does not suggest that the settlement is justified by the preemption argument raised in First Niagara's motion to dismiss [37], which this and other courts have rejected.

Settlement Class member's damages or in maintaining the class action through trial...: Nor is Plaintiff concerned that First Niagara cannot pay a substantial judgment." Plaintiff's Memorandum of Law [92–1], p. 12.

### Factors 8–9: The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

"[T]he most significant factor for the district judge is the strength of plaintiffs' case balanced against the settlement offer.... [H]e is required to explore the facts sufficiently to make an intelligent comparison between the amount of the compromise and the probable recovery." *Traffic Executive Association*, 627 F.2d at 633. *See also Global Crossing Securities*, 225 F.R.D. at 455 (the court's "primary concern [is] with the substantive terms of the settlement ... and how they compare to the likely result of a trial"); *Martin*, 295 F.R.D. at 384 ("The most important consideration is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement"). Therefore, "the Court must ... insist that the parties present evidence that would enable possible outcomes to be estimated, so that it can at least come up with a ballpark valuation". *Id.*

Plaintiff argues that "[t]he maximum potential recovery if the case were to be litigated to judgment by trial would be

[51, 59]. *See Zink*, 18 F.Supp.3d at 371 ("RPL § 275 and RPAPL § 1921 are not preempted by federal law); *Adler v. Bank of America, N.A.*, 2014 WL 3887224, *5 (S.D.N.Y.2014) ("defendant has failed to demonstrate [that] RPAPL § 1921 and RPL § 275 are preempted by federal law").

$4,154,500. The $2.2 million Defendant is making available is 53% of that amount." Plaintiff's Memorandum of Law [92–1], p. 14. However, after deducting from the $2.2 million Settlement Fund the requested one-third attorney's fees ($733,333), the minimum estimated costs of notice and administration ($30,000), and plaintiff's requested incentive payment ($5,000), the balance available for distribution to the class would be $1,431,667, which is 34.4% of their maximum potential recovery.

Whichever figure is used, I fail to see why such a substantial discount from the maximum recovery is warranted, particularly where plaintiff claims he already has the information necessary to establish damages with certainty (plaintiff's Memorandum of Law [92–1], p. 12), is not concerned about First Niagara's ability to pay a substantial judgment (id.), and fails to identify any specific defense which would warrant a reduction of that magnitude. "[C]ourts may deny preliminary approval ... based on the settling parties' failure to furnish the court with enough information and evidence to enable it to rationally assess the reasonableness of the proposed consideration." Rubenstein, *Newberg on Class Actions,* § 13:15 (5th ed.).

For example, in *Brown,* the court denied preliminary approval where "[t]he parties offer[ed] no viable way to gauge the reasonableness of the Settlement Agreement". 2015 WL 1062409, *4. "That is, the parties make no attempt to present a factual basis for how [the settlement figure was] arrived at.... What specifically were the risks of this litigation?". *Id.*

I share the *Brown* court's concerns: if there are valid reasons for recommending the proposed settlement, they have not been adequately discussed in the Uncontested Motion.

## D. Is the Proposed Notice to Class Members Sufficient?

 Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort". "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Hecht v. United Collection Bureau, Inc.,* 691 F.3d 218, 224 (2d Cir.2012).

Proper notice is particularly important in this case, where the claims of all class members "who have not timely and properly requested exclusion" from the class will be extinguished. Settlement Agreement and Release [92–3], p. 15 of 62, § 5.05. In order to request exclusion, the party must submit notify the Settlement Administrator in writing (Notice of Pendency and Proposed Settlement [92–3], pp. 34–35 of 62, § 16)—which obviously presupposes that the party has received notice of the proposed settlement.

Plaintiff claims that "using NTC's data, the Parties have identified the precise mortgagors who paid of[f] their mortgage after July 19, 2010 and for whom a certificate of discharge was not timely presented". Plaintiff's Memorandum of Law [92–1], p. 19. However, since plaintiff elsewhere states that NTC "prepared and presented the *majority* of the certificates of discharge at issue" (*id.,* p. 2, emphasis added), it is unclear whether plaintiff has identified the entire class.

 While plaintiff "proposes to provide direct mailed notice to members of the Settlement Class" (*id.,* p. 23), he admits that "First Niagara only has, for a portion of the class, the mailing address of the home whose mortgage was satisfied

... rather than a current address." *Id.*, p. 6. Although mailing addresses will be updated through the U.S. Postal Service database (Devery Declaration [92–5], ¶ 7), plaintiff offers no specifics as to how many class members will be reached in that manner. Therefore, I do not consider mailing alone to be "the best notice that is practicable under the circumstances".

■■■ "To the extent ... that individual members cannot be identified, notice by publication is sufficient." *Spector v. City of New York*, 71 F.R.D. 550, 553 (S.D.N.Y. 1976). However, "when courts have approved notice by publication, they have tended to do so where the notices either ran more than once or appeared in more than one publication". *Hecht*, 691 F.3d at 224–25.

■■■ In addition to the method of notice to class members, I have concerns with its content. The notice "must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment". *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1105 (5th Cir.1977); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir.2006). In determining whether to accept the proposed settlement, a class member would presumably want to know how the proposed settlement amount would compare to his or her maximum potential recovery, yet the notice fails to disclose the maximum possible penalties. Instead, it states merely that "statutory penalties ... increase depending on how late the satisfaction of mortgage was presented". Summary Notice [92–3], p. 40 of 62; *see also* Notice of Pendency [92–3], p. 29 of 62.

Moreover, while "the notice should be scrupulously neutral", *Traffic Executive Association*, 627 F.2d at 634, and "must

express no opinion on the merits of the settlement". *Handschu v. Special Services Division*, 787 F.2d 828, 832–33 (2d Cir.1986), the Notice of Pendency eschews neutrality: "Plaintiff and Plaintiff's Counsel believe that the Settlement is *fair and reasonable* to the members of the Class.... If the Settlement is approved, the Class will receive a *significant* monetary recovery. Additionally, plaintiffs Counsel believes that the *significant and immediate benefits* of the proposed Settlement are an *excellent result* for the Class". [92–3], p. 30 of 62 (emphasis added).

## CONCLUSION

"The Court recognizes fully that it is unusual to deny an application for preliminary approval of a class action settlement agreement." *Brown*, 2015 WL 1062409, *1, n. 2. However, where the proposed settlement fails to adequately protect the interests of absent class members, preliminary approval should be denied. *Id.*, **4–6. For the several reasons discussed herein, I recommend that the Uncontested Motion [92] be denied, without prejudice to renewal upon a more detailed and substantial showing that this court has subject matter jurisdiction and, if so, that the proposed settlement is both procedurally and substantively fair to absent class members.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by November 6, 2015 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely ... waives any right to further judicial review of [this] decision". *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.1988); *Thomas v. Arn*,

474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

██ Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.