GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE
Plaintiff Andrew Bracken has moved for a default judgment against defendant MH Pillars Inc. For the reasons set forth below, this Court lacks subject matter jurisdiction over this action and thus the case should be dismissed without prejudice.
I. BACKGROUND
Bracken filed a complaint on September 16, 2015 (Docket # 1), and an amended complaint on November 4, 2015 (Docket # 14) ("Am. Compl."). The amended complaint named MH Pillars Inc., Obopay, Inc. and Ultralight FS, Inc. as defendants. Id. at 1. The complaint alleged that MH Pillars, under its trade name Payza and in conjunction with co-defendants Obopay, Inc. and Ultralight FS, Inc. (collectively, "Obopay"), provided "money transfer services" to Bracken's online business, Bidxcel, LLC, in addition to the general public. See id. ¶¶ 2-4, 7. Bracken established a corporate account with MH Pillars, in the name of Bidxcel, in the fall of 2012. Id. ¶ 7. At the time he filed the amended complaint, in November 2015, Bidxcel's account with MH Pillars had a balance of $38,871.30, representing payments to Bidxcel from customers. Id. ¶ 8. Despite repeated requests, MH Pillars had refused to release the funds, claiming that the funds were frozen due to a U.S. Department of Justice investigation. Id. ¶¶ 9-10. MH Pillars "improperly blamed the entire *261 situation on Obopay," whom it had employed as its agent for the distribution of funds throughout the United States. Id. ¶ 10-11. Pursuant to their agreement, Obopay agreed to supply MH Pillars with the required licensing to operate and provide services to its U.S. customers, see id., but Obopay, in fact, "was an illegitimate provider of [such] banking services," id. ¶ 16. The investigation was ongoing as of the filing of the complaint. Id. ¶ 21.
Obopay moved to dismiss the complaint for lack of personal and subject matter jurisdiction. See Notice of Motion to Dismiss, filed Feb. 4, 2016 (Docket # 25). On December 29, 2016, the Court denied the motion to dismiss without prejudice to renewal following jurisdictional discovery. See Bracken v. MH Pillars Inc., 2016 WL 7496735 (S.D.N.Y. Dec. 29, 2016) (" Bracken"). Obopay later entered into a stipulation of dismissal with Bracken. See Stipulation of Discontinuance Against Obopay, Inc. and Ultraight [sic] FS, Inc., filed Mar. 6, 2017 (Docket # 43).
MH Pillars never responded to the complaint, however. Bracken obtained a Clerk's Certificate of Default on May 26, 2017 (Docket # 48) and then moved for a default judgment against MH Pillars, see Notice of Motion for Default Judgment, filed June 7, 2017 (Docket # 49). The motion papers included a declaration and documentary evidence supporting his request for an award of damages. See Affirmation of Dayton Haigney, in Support of Plaintiff's Motion for a Default Judgment, filed June 7, 2017 (Docket # 50) ("Haigney Aff."). Bracken sought a judgment for $38,871.30. Id. ¶ 10.
On June 29, 2017, MH Pillars was ordered to show cause why a default judgment should not be entered in favor of Bracken for the relief requested in the amended complaint. (Docket # 51). MH Pillars did not appear or otherwise respond to the order to show cause. See Plaintiff's Supplemental Memorandum of Law in Support of Default Judgment, filed Oct. 12, 2017 (Docket # 60) ("Pl. Supp. Mem."), at 1.
On September 1, 2017, the district court referred Bracken's motion for a default judgment to the undersigned for a report and recommendation. See Order of Reference, dated Sept. 1, 2017 (Docket # 55). On September 6, 2017, this Court instructed Bracken to file a supplemental memorandum and related affidavits by September 20, 2017, providing the factual and legal bases for subject matter jurisdiction and for personal jurisdiction over MH Pillars. See Order, dated Sept. 5, 2017 (Docket # 56). Bracken filed a supplemental memorandum of law in response to the Court's September 6 Order, but did not attach an affidavit or provide citations for factual statements. See Plaintiff's Supplemental Memorandum in Support of Default Judgment, filed Sept. 20, 2017 (Docket # 57). Accordingly, the Court ordered Bracken to resubmit a memorandum of law providing citations for factual assertions and to supply an affidavit supporting any facts relevant to his arguments. See Order, dated Sept. 28, 2017 (Docket # 58). On October 12, 2017, Bracken filed an amended memorandum of law and an affidavit from himself. See Pl. Supp. Mem.; Affidavit of Andrew Bracken, dated Oct. 12, 2017 (Docket # 59) ("Bracken Aff.").
II. EFFECT OF ENTRY OF DEFAULT
The default entered in this case establishes MH Pillars's liability. See Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995). In the default judgment context, the only issue that usually needs to be decided is whether the plaintiff has provided adequate support for the damages or other relief he seeks. See, *262 e.g., GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009) ("A default judgment that is entered on the well-pleaded allegations in a complaint establishes defendant's liability ... and the sole issue that remains before the court is whether the plaintiff has provided adequate support for the relief it seeks.") (citations omitted). However, "when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986) ; accord System Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY, 242 F.3d 322, 324 (5th Cir. 2001) ; In re Tuli, 172 F.3d 707, 707 (9th Cir. 1999).
Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." In doing so, a court is not limited to examining the complaint itself, but may "refer to any material in the record." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) ; see generally Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings.").
III. SUBJECT MATTER JURISDICTION
A. Legal Principles
The amended complaint invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332. See Am. Compl. ¶ 6. Section 1332 authorizes federal courts to exercise jurisdiction over an action where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and complete diversity exists between the parties. Hallingby v. Hallingby, 574 F.3d 51, 56 (2d Cir. 2009) (quoting 28 U.S.C. § 1332(a)(1) )
The amount in controversy requirement may be met by a combination of economic and non-economic losses and punitive damages, so long as the punitive damages are permitted under the controlling law. See In re Gen. Motors LLC Ignition Switch Litig., 2015 WL 2130904, at *2-3 (S.D.N.Y. May 6, 2015) ; see also A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991) ("if punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied.") (citing 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3702, at 44 (2d ed. 1985) ). The requirement may also be met by aggregating a plaintiff's claims. See Pollock v. Trustmark Ins. Co., 367 F.Supp.2d 293, 300 (E.D.N.Y. 2005) (citing 15 James W. Moore, Moore's Federal Practice § 102.108(1) (3d ed. 2004)).
The "party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Scherer v. Equitable Life Assur. Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (quoting Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) ). This burden, in most cases, is "hardly onerous ... for we recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.' " Id. (quoting Wolde-Meskel v. Vocat'l Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999) ); accord *263 Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012) ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.") (quoting Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004) ). But a plaintiff's allegation regarding the amount in controversy may be overcome by a finding "to a legal certainty" that the amount recoverable does not exceed the jurisdictional minimum amount. Scherer, 347 F.3d at 397 (quoting Wolde-Meskel, 166 F.3d at 63 ). Courts have "set a high bar for overcoming this presumption." Id."[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co. of Chi., 93 F.3d 1064, 1070-71 (2d Cir. 1996) (quoting Tongkook, 14 F.3d at 785 ). Put another way, "[t]he question ... is whether to anyone familiar with the applicable law this claim could objectively have been viewed as worth more than the jurisdictional minimum." Abdel-Aleem, 665 F.3d at 41 (internal quotation marks omitted) (quoting Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir. 1995) ).
When an amount for punitive damages is required for a claim to meet the jurisdictional threshold, courts "will consider those punitive damages with heightened scrutiny." Nwanza v. Time, Inc., 125 Fed.Appx. 346, 349 (2d Cir. 2005) (citing Zahn v. Int'l Paper Co., 469 F.2d 1033, 1034 n.1 (2d Cir. 1972) ).
B. Analysis
The amended complaint alleges fraud, negligent misrepresentation, tortious interference with contract, breach of contract, promissory estoppel and quantum meruit, and a violation of New York's deceptive business practices law, N.Y. Gen. Bus. Law § 349. Am. Compl. ¶ 22-56. Each claim incorporates the facts section of the complaint, alleging that Bracken "established [a corporate] account" or "contracted" with MH Pillars "to allow [Bracken's] customers to conduct online transactions to purchase [Bracken's] offered products online," id. ¶¶ 2, 7, 36; that Bracken paid a transaction fee to MH Pillars for each such purchase, id. ¶ 8; that MH Pillars refused to release funds accrued in Bracken's account to Bracken "because the funds were apparently frozen due to a Department of Justice Investigation [sic] and through no fault of [Bracken]," id. ¶ 10; that MH Pillars operated in the United States through an agent, Obopay, id. ¶ 11; that MH Pillars blamed the investigation on Obopay, id. ¶ 10; that MH Pillars "knew or should have known that Obopay was an illegitimate provider of the banking services [MH Pillars] sought to perform ... and failed to undertake any reasonable investigation whatsoever to discovery [sic] as much," id. ¶ 16; and that MH Pillars's agreement with Obopay "was never in compliance with U.S. law," id. ¶ 15.
As for damages, the complaint alleges that the defendants failed to pay him the $38,871.30 in his account with MH Pillars. Id. ¶ 8. The amended complaint also repeatedly states, without explanation, that "[a]s a direct and proximate result of Defendants' " acts, "Plaintiff is entitled to damages in excess of $75,000.00." Id. ¶¶ 26, 30, 34, 39, 44, 49, 56. In a supplemental affidavit, Bracken states that he suffered additional losses consisting of "the harm caused to my business and me during the process of winding down and due to the inconvenience and distress I suffered in dealing with this issue while attempting to wind down my company." Bracken Aff. ¶ 9. This allegation appears nowhere in the original or amended complaint, however.[1]
*264 Bracken also notes that he seeks punitive damages for his fraud claim, Pl. Supp. Mem. at 3-4; Bracken Aff. ¶ 9, and attorney's fees as to his New York statutory claim, Am. Compl. ¶ 55.
We next discuss whether Bracken has shown that there is a "reasonable probability that the claim is in excess of the statutory jurisdictional amount" as to each of Bracken's causes of action. Scherer, 347 F.3d at 397. To answer this question, we begin by examining whether any of the claims other than his breach of contract action state causes of action under New York law.[2] We engage in this exercise because even in the context of a default judgment, a district court "is ... required to determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) ).
1. Tort Claims (Counts I, II, III and VI)
Under New York law,
a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.
Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) (internal citations omitted)); accord Graubart v. Jazz Images, Inc., 2006 WL 1140724, at *4 (S.D.N.Y. Apr. 27, 2006). Thus, for example, "a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations." Rocanova v. Equitable Life Assur. Soc'y of U.S., 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994) ; accord Cronos Grp. Ltd. v. XComIP, LLC, 156 A.D.3d 54, 64 N.Y.S.3d 180, 186 (N.Y. 1st Dep't 2017) (slip opinion) ("This Court has held numerous times that a fraud claim that 'ar[ises] from the same facts [as an accompanying contract claim], s[eeks] identical damages and d[oes] not allege a breach of any duty collateral to or independent of the parties' agreements' is subject to dismissal as 'redundant of the contract claim.' ") (alteration in original) (quoting Havell Capital Enhanced Mun. Income Fund, L.P. v. Citibank, N.A., 84 A.D.3d 588, 589, 923 N.Y.S.2d 479 (1st Dep't 2011) ). A tort claim that constitutes "merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract" is similarly subsumed by the breach of contract claim. Clark-Fitzpatrick, Inc., 70 N.Y.2d at 390, 521 N.Y.S.2d 653, 516 N.E.2d 190. This is because "[o]bligations that flow exclusively from a contract must be enforced as contractual duties under a theory of contract law." Landon v. Kroll Lab. Specialists, Inc., 91 A.D.3d 79, 82, 934 N.Y.S.2d 183 (2d Dep't 2011) (citations omitted).
Here, Bracken's tort claims-that is, his claims for fraud, negligent misrepresentation, tortious interference with contract, *265 and conversion-duplicate his breach of contract claim. Bracken concedes that a contract governed his relationship with MH Pillars. See Am. Compl. ¶ 36. While Bracken has not provided a copy of the contract,[3] the only breach of that contract alleged in the complaint is that MH Pillars "fail[ed] to pay Plaintiff and Bidxcel the amounts Plaintiff and/or Bidxcel were owed under the contract." Id. ¶ 38. In other words, the contract created the obligation to make the payments that Bracken seeks here. Accordingly, Bracken's tort claims must assert some legal duty independent from the duty to "pay [Bracken] the amounts [he] w[as] owed under the contract." Id.
For both his fraud and negligent misrepresentation claims, Bracken contends that MH Pillars violated either its duty to "release payments when requested" or "refused to pay [Bracken] the money to which [he is] entitled." Id. ¶¶ 25, 28. But these are indistinguishable from MH Pillars' obligation to make a payment under their contract. Bracken does not bring to the Court's attention any cases setting forth a separate legal duty owed by a payment processor to its account holders, and we are aware of none. See generally Clark-Fitzpatrick, Inc., 70 N.Y.2d at 385-86, 390, 521 N.Y.S.2d 653, 516 N.E.2d 190 (dismissing negligence claims where contractor alleged that the railroad "entered into the contract with full knowledge of the problems, but intentionally concealed them from plaintiff" and noting that "[m]erely charging a breach of a 'duty of due care,' employing language familiar to tort law, d[id] not, without more, transform a simple breach of contract into a tort claim."); Cronos Grp. Ltd., 64 N.Y.S.3d at 182-84, 185-86 (dismissing fraud claim where plaintiff alleged that the defendant had "fraudulently induced" it to keep using the defendant's network on account of "false promises of resolving the disputed amounts" resulting in plaintiff incurring additional charges); see also Graubart, 2006 WL 1140724, at *1 (fraud and conversion claims were "redundant" and therefore not available for aggregation in determining the jurisdictional amount under 28 U.S.C. § 1332 ).
The claim for tortious interference with contract alleges the same duty-"[MH Pillars], without justification, refused to pay [Bracken] the money owed to [him]." Id. ¶ 33. Thus, it too duplicates the breach of contract claim. See Allerand, LLC v. 233 E. 18th St. Co., L.L.C., 19 A.D.3d 275, 277-78, 798 N.Y.S.2d 399 (1st Dep't 2005) (granting motion for summary judgment on tortious interference of contract claim because "[t]he parties' rights and obligations respecting the matter in dispute are governed by their contract and the purported claim for tortious interference with contract does no more than restate plaintiffs' claim for the contract's breach"); accord Oliver Wyman, Inc. v. Eielson, 2016 WL 5339549, at *11 (S.D.N.Y. Sept. 22, 2016) (dismissing claim for tortious interference with contract because the acts underlying the claim "merely restate" the allegations underlying the breach of contract claim). The tort of conversion fails for similar reasons. As Bracken phrased it in his complaint, "[MH Pillars] refused to compensate [Bracken] without justification." Am. Compl. ¶ 48. There is no source of the duty "to compensate" other than the contract. See, e.g., Peters Griffin Woodward, Inc. v. WCSC, Inc., 88 A.D.2d 883, 883, 452 N.Y.S.2d 599 (1st Dep't 1982) (action for conversion can not be maintained where damages are being sought for breach of contract) (citation omitted).
*266 That Bracken's tort claims cannot co-exist with his breach of contract claim is further supported by the more general principle that "New York law ... restrict[s] plaintiffs who have suffered 'economic loss,' but not personal or property injury, to an action for the benefits of their bargains. If the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort." Carmania Corp. N.V. v. Hambrecht Terrell Int'l, 705 F.Supp. 936, 938 (S.D.N.Y. 1989) ) (citing Key Int'l Mfg., Inc. v. Morse/Diesel, Inc., 142 A.D.2d 448, 451-52, 536 N.Y.S.2d 792 (2d Dep't 1988) ). Here, the only damages that are described in the complaint in non-conclusory terms are Bracken's claims to the unpaid amount in his account. Am. Compl. ¶¶ 1, 8-10.
2. Quasi-Contractual Claims (Count V)
Bracken also brings causes of action under promissory estoppel and unjust enrichment. Am. Compl. ¶¶ 41-44. Under New York law, however, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc., 70 N.Y.2d at 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 ; see also Cronos Grp. Ltd., 64 N.Y.S.3d at 194-95 (dismissing quantum meruit and unjust enrichment claims "because the matters at issue are governed by a written agreement."). Because a contract allegedly governs the parties' dispute, these claims are precluded.
3. Breach of Contract (Count IV)
Bracken's actual damages for his breach of contract claim are $38,871.30. See Am. Compl. ¶ 8. While the complaint alleges that Bracken "is entitled to damages in excess of $75,000.00," resulting from the breach of contract, Am. Compl. ¶ 39, it gives no explanation whatsoever as to the nature of any damages beyond the damages from the failure to pay. To recover consequential damages under New York law, the damages must be foreseeable to the parties. See Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y., 10 N.Y.3d 187, 192-93, 856 N.Y.S.2d 505, 886 N.E.2d 127 (2008) ("It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, '[i]t is only necessary that loss from a breach is foreseeable and probable ...' ") (modifications in original) (quoting Ashland Mgmt. v. Janien, 82 N.Y.2d 395, 403, 604 N.Y.S.2d 912, 624 N.E.2d 1007 (1993) ). Here, the contract has not been included in the record and there is no description of any agreement between the parties as to consequential damages. The consequential damages are not described in the complaint. We thus do not include any claim for consequential damages in calculating the amount in controversy.
Bracken's complaint also seeks punitive damages. See Am. Compl. at 9 (seeking "punitive damages due to Defendants' willful and malicious conduct"). Under New York law, to state a claim for punitive damages arising from a breach of contract, the pleadings must show four elements: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature ...; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (citations omitted); see also Rocanova, 83 N.Y.2d at 613, 612 N.Y.S.2d 339, 634 N.E.2d 940 ("[A] private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was *267 part of a pattern of similar conduct directed at the public generally."); TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 94 (2d Cir. 2005) (explaining the continuing validity of New York University and rejecting a claim for punitive damages as insufficiently public in nature); Cookware Co. (USA), LLC v. Austin, 2016 WL 7378762, at *5-6 (S.D.N.Y. Dec. 8, 2016) (applying the four factors to a breach of contract dispute arising out of a contract between a manufacturer and a former distributor turned competitor). To satisfy the first element of this test, a claimant must "identify a tort independent of the contract." N.Y. Univ., 87 N.Y.2d at 316, 639 N.Y.S.2d 283, 662 N.E.2d 763. However, "[w]here a party is merely seeking to enforce its bargain, a tort claim will not lie." Id. Here, as already explained, Bracken has not identified any independent tort. See Section II.B.1. Bracken has therefore failed to meet the first prong and will not be able to recover punitive damages on his breach of contract claim.[4]
4. New York's Deceptive Business Practices Act (Count VII)
Bracken seeks damages under N.Y. Gen. Bus. Law § 349. Am. Compl. ¶¶ 51-56.[5] Section 349 provides:
any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.
N.Y. Gen. Bus. Law § 349. As already noted, Bracken's "actual damages" are only $38,871.30. The statute allows treble damages, but limits this trebling to "one thousand dollars."
We are aware that Bracken has made a general claim for "punitive damages." Am. Compl. at 9. This does not allow him, however, to meet the jurisdictional threshold. While courts differ on the availability of punitive damages under § 349, compare Bueno v. LR Credit 18, LLC, 269 F.Supp.3d 16, 18-24, 2017 WL 3986577, at *2-5 (E.D.N.Y. Sept. 7, 2017) and Wilner v. Allstate Ins. Co., 71 A.D.3d 155, 167, 893 N.Y.S.2d 208 (2d Dep't 2010), with Guzman v. Harris, 2017 WL 4386369, at *1-4 (S.D.N.Y. Sept. 29, 2017), it is not necessary to reach this issue because, where punitive damages are permitted, it is only "where the conduct of the party being held liable evidences a high degree of moral culpability, or where the conduct is so flagrant as to transcend mere carelessness, or where the conduct constitutes willful or *268 wanton negligence or recklessness." Wilner, 71 A.D.3d at 167, 893 N.Y.S.2d 208 (quoting Pellegrini v. Richmond Cnty. Ambulance Serv., Inc., 48 A.D.3d 436, 437, 851 N.Y.S.2d 268 (2d Dep't 2008) ); accord Randi A.J. v. Long Island Surgi-Center, 46 A.D.3d 74, 80-81, 842 N.Y.S.2d 558 (2d Dep't 2007). Here, the complaint makes no non-conclusory allegation of this nature. Bracken argues that he states a prima facie case for punitive damages because MH Pillars "was, and remains, under federal criminal investigation." Pl. Supp. Mem. at 3. But the mere fact that a government investigation is ongoing falls far short of meeting the threshold for punitive damages. Because the complaint is devoid of allegations that meet the punitive damages standard, the potential for punitive damages may not be used to meet the diversity jurisdiction threshold. See generally Law Offices of Louis Venezia v. Swarth, 1998 WL 695244 (2d Cir. 1998) (diversity jurisdiction threshold not met because plaintiff did not meet burden of showing that he could recover punitive damages under New York law) (summary order).
While Bracken does not argue the point, we note that he cannot use the fact that the statute states that a court "may" award attorneys' fees to meet the jurisdictional threshold. An award of attorneys' fees may be used to meet the statutory jurisdictional threshold "only if they are recoverable as a matter of right pursuant to statute or contract." Kimm v. KCC Trading, Inc., 449 Fed.Appx. 85, 85-86 (2d Cir. 2012) (citing Givens v. W.T. Grant Co., 457 F.2d 612, 614 (2d Cir. 1972) ); accord Cohen v. Narragansett Bay Ins. Co., 2014 WL 4701167, at *2 (E.D.N.Y. Sept. 23, 2014) (noting that attorneys' fees "may not be used to satisfy the amount in controversy for purposes of diversity," if the fees are not recoverable as a matter of right per statute or contract). Because an award of attorneys' fees is discretionary under § 349, the potential for an award of fees under § 349 cannot be used to meet the amount in controversy requirement. See, e.g., Post v. Gen. Motors Corp., 2002 WL 1203847, at *4 (S.D.N.Y. June 3, 2002).
* * *
In sum, Bracken has not shown that there is a "reasonable probability" that his claim against the defendants was in excess of $75,000, and the Court is satisfied "to a legal certainty" that the amount he could recover does not exceed the jurisdictional minimum Scherer, 347 F.3d at 397. Rather he has shown that he has a claim for only $38,871.30. Thus, the Court lacks subject matter jurisdiction over this action under 28 U.S.C. § 1332.
IV. CONCLUSION
Because the Court lacks subject matter jurisdiction, the motion for default judgment (Docket # 49) should be denied and the case should be dismissed for lack of subject matter jurisdiction. The dismissal should be without prejudice. See Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999) (dismissals for lack of subject-matter jurisdiction are necessarily without prejudice).
PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION
Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Ronnie *269 Abrams at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections or responses must be directed to Judge Abrams. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

The amended complaint alleges that Bracken "made clear to Defendants that the money was required for Plaintiff and/or Bidxcel to remain in business, and subsequently, in order to dissolve and wind down Bidxcel's affairs." Am. Compl. ¶ 9. But the complaint does not mention distress or connect the failure to pay to any harm caused to Bidxcel or Bracken during Bidxcel's dissolution.

Given that Bracken brings claims under a New York statute and that he cites only to New York law in support of his motion for default, we apply New York law.

Although the amended complaint states that a copy of the contract is annexed to the complaint, Am. Compl. ¶ 36, it is not in fact annexed to any of the filed complaints.

Because Bracken has not shown an independent tort, we do not need to reach Bracken's argument that the public harm and egregiousness elements have been satisfied. See Pl. Supp. Mem. at 3-4 (citing 3801 Beach Channel, Inc. v. Shvartzman, 2010 WL 6471990, at *3-4, 2010 U.S. Dist. LEXIS 142436, at *14 (E.D.N.Y. Sept. 30, 2010) ; Guo Jin v. EBI, Inc., 2006 WL 3335102, at *1-2, 2006 U.S. Dist. LEXIS 75390, at *3-4 (E.D.N.Y. Oct. 17, 2006) ). In any event, we would reject his arguments because the allegations of the complaint do not show "egregious" conduct. Rather, they show only a failure to pay money owed.

While we have doubts that the complaint states a claim under § 349 in light of the absence of allegations that the transaction or deception occurred in New York, see, e.g., Cline v. TouchTunes Music Corp., 211 F.Supp.3d 628, 632-35 (S.D.N.Y. 2016), it is not necessary to reach this issue.